IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE )
)
)
v. ) I.D.: 1408017638
)
)
JERMAINE BOOKER, )
)
Defendant. )

Submitted: May 15, 2019
Decided: July 3, 2019

*Defendant's Motion for Postconviction Relief.*
**DENIED.**
*Motion to Withdraw as*
*Counsel for Petitioner Jermaine Booker.*
**GRANTED.**

## ORDER

This 3rd day of July, 2019, it appears to the Court that:

1. Defendant Jermaine Booker ("Booker") has filed a motion for postconviction relief. This is his first postconviction motion following a jury trial and direct appeal. New counsel was appointed to support whatever arguments he wished to make in connection with the postconviction motion. That counsel, however, has filed a motion to withdraw on grounds that a conscientious review has failed to unearth any arguably meritorious issues. Booker was given time to respond to the motion and has communicated with the Court with his own *pro se* pleading.

1

2. As briefly as can be stated, defendant entered a home in a north Wilmington suburb on the morning of January 2, 2014. His apparent intent was burglary, as he had committed a separate burglary in that neighborhood a couple of months earlier. The homeowner, Jacqueline Fiori was either present when he entered or interrupted the burglary in progress. We do not know because Jacqueline Fiori suffered egregious, life threatening injuries as a result of her confrontation Mr. Booker.

3. After his convictions were affirmed on appeal, Booker filed this motion for post-conviction relief. Counsel was appointed for him to articulate such arguments as he could make to mount a collateral attack on his conviction. After some months, counsel filed a brief with the Court seeking leave to withdraw as counsel on grounds that after a thorough review of the entire record, neither the grounds stated in Booker's initial pleading nor any other grounds counsel could conceptualize were worthy of consideration by the Court.

4. Booker's first argument was that he was denied effective assistance of counsel in that trial counsel failed to cross-examine the two victims about their exculpatory statements of identification. Jacqueline Fiore, blinded by her attacker and incompetent to answer questions while in the intensive care unit, appeared to identify her attacker as a white person.

2

5.     What Booker ignores in his pleading is the sympathy any juror would have felt about Jacqueline Fiore as she was wheeled into the courtroom and to the witness stand.   Any rational defense counsel would want her off the stand and out of the courtroom as quickly as possible.  The state gave the defense what it needed concerning her failure to identify the defendant and her "identification" of a white person as she lay, semi-conscious in the Emergency Room.[1]

---

[1] The chief investigating officer described his attempts to speak to Ms. Fiori on the date of the crime.  The officer met her at the ICU at the Christiana Medical Center and tried to get information from her about her attacker.  Among her injuries were cuts to her face that removed one eye and left her blind in the other.  She was also non-verbal, but could just lift a thumb.  The conversation went something like this:

A.     I believe the first question was could she hear me, to which she gave a thumbs up.

The next few questions were basic questions.  Is your name Jacqueline? Give me a thumbs up.

The next question would have been, Is your last name Fiore, to which she gave me a thumbs up.

About the fourth question was, Do you recall what happened to you, to which she gave a thumbs down.

The next question would be, Do you recall who did this to you, and she gave no reply.  There was no response whatsoever.

The next question was, I believe, Was the person that attacked you white, to which she replied with a thumbs up.

The next question was, Was the person black and she gave no response again.

Trial Transcript, p. 47.

6.      Likewise, cross-examining the prior burglary victim, Van Dyk, on his non-identification of the defendant had its own problems. While Van Dyk did not pick Booker out of a standard photo lineup, postconviction counsel noted that the police reports show that he did recognize the defendant when he saw his photo in the newspaper after his arrest. Had defense counsel deliberately drawn out Van Dyk's failure to make a pretrial identification via cross examination, he'd have risked Van Dyk making an identification in a dramatic gesture in open court.

7.      Without conceding that trial counsel met a threshold of ineffective assistance, defendant was identified by any number of evidentiary items, not the least being Jacqueline Fiore's blood on his sneakers. The lack of good identification testimony from the victims was placed before the jury, albeit by the prosecution. Defendant has failed to demonstrate prejudice from whatever choices counsel made concerning the witness' pretrial statements of identification.

8.      Secondary to these arguments, Booker claimed that his trial counsel was ineffective for failing to call his aunt and his cousin as alibi witnesses to testify that he was at home sleeping on the couch at the time of Jacqueline Fiore's attack.

9.      But the police reports, reviewed by post-conviction counsel, belie his asserted alibi. His aunt told police that on the date of the crime, she left the house early, did not know if Booker was home, and did not see him until 8 p.m. that night. Admittedly, she gave a second statement a week later saying she made breakfast for

Booker that morning, but the damage was done – there was a prior statement by the alibi witness that did not support the alibi. And the alibi was already problematic given the large amount of other evidence that tied him to the offenses.

10. The reports also reveal that Booker's cousin gave a statement to police 5 days after the crime that Booker had slept on a basement sofa in her residence the night of January 1, that she woke up at noon on January 2 and Booker was gone. Thus, the alibi was not an alibi as the assault occurred in the morning hours of January 2. And not only was the statement not an alibi, but Booker told police upon his arrest on January 5 that he had not been in Delaware in over a week. His own statement thus contradicted the proposed alibi witness. Facts are stubborn things.[2] The evidence against Booker was daunting; there was little if any reason to make it worse by presenting alibi statements that could easily be swatted away by the prosecutor, thus undermining whatever credibility the defense may have earned elsewhere.

---

[2] John Adams, 2nd President of the U.S., Argument in Defense of the Soldiers in the Boston Massacre Trials: the Trial of William Wemms, James Hartegan, William M'Cauley, and others for the Murder of Crispus Attucks and others in the Superior Court of Judicature, Court of Assize, and General Goal Delivery (December 4, 1770)("Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passions, they cannot alter the state of facts and evidence."), *in* Nat'l Archives Online, https://founders.archives.gov/documents/Adams/05-03-02-0001-0004-0016 .

11. Finally, Booker's Rule 61 motion made claims of prosecutorial misconduct, all of which were addressed in his direct appeal to the Supreme Court and found deficient. The mere fact that they are repeated in a Rule 61 motion does not elevate the quality of the argument beyond that already addressed in the direct appeal.

12. Upon receipt of postconviction counsel's motion to withdraw, Booker was invited to place any additional arguments before the Court he wished the Court to consider. Booker did indeed file a supplemental document, but it essentially reiterates the arguments addressed herein. The supplemental documentation adds nothing to the analysis, nor does it raise any new or different issue not addressed herein.

Therefore, in light of the foregoing, the motion for post-conviction relief under Rule 61 is **DENIED**. Postconviction counsel's motion to withdraw from representation is **GRANTED**.

**IT IS SO ORDERED.**

Judge Charles E. Butler

6